UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| LAUREN ANN KORDECK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:14-CV-431-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lauren Ann Kordeck on November 21, 2014, and Plaintiff's Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on June 12, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 24, 2015, the Commissioner filed a response, and on August 7, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On April 23, 2012, Plaintiff filed an application for benefits alleging that she became disabled on May 2, 2011. Plaintiff's application was denied initially and upon reconsideration. On July 23, 2013, Administrative Law Judge ("ALJ") Henry Kramzyk held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On September 13, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since May 2, 2011, the alleged onset date.

3. The claimant had the following severe impairments: seizure disorder, amnesic disorder, depression, and anxiety, with a history of substance use.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work except that the claimant is limited to no more than occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds, kneeling, or crawling, and is limited to no more than occasional balancing, stopping, or crouching. The claimant is able to understand, remember, and carry out short, simple, repetitive instructions. She is able to sustain attention and concentration for two hour periods at a time and for eight hours in the workday on short, simple, repetitive instructions. She is able to use judgment in making work decisions related to short, simple, repetitive instructions. She requires an occupation with set routine and procedures, and few changes during the workday. The claimant is unable to engage in fast-paced production work. However, she is able to maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule. The claimant must avoid all exposure to wetness, including wet, slippery, or uneven surfaces. The claimant must avoid all exposure to wetness, including wet, slippery, or uneven surfaces. The claimant must avoid all exposure to hazards, such as unprotected heights and dangerous machinery, and she is unable to drive vehicular equipment as part of her employment duties.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 23 years old, defined as a younger individual, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not she has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2011, through the date of this decision.

The Appeals Council denied Plaintiff's request for review and denied her request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff suffered brain injury in a car accident in 2004. On May 2, 2011, Plaintiff went to the emergency room for a seizure, and returned to the emergency room on May 13, 2011, and in August 2011 with additional seizures. She was diagnosed with unspecified epilepsy, cannabis abuse, memory loss, and diplopia. Neurologist Dr. Maniar first examined Plaintiff in the emergency room in May 2011 and continued to treat her through the beginning of 2012. He put her on medication for her seizures which she complained caused abdominal pain and loose stool. He opined that Plaintiff should not drive and should not work. Plaintiff had several other seizures in this time period, including another that caused her to seek emergency room treatment in March 2012 and caused acute respiratory failure. In April 2012 Plaintiff began treatment with neurologist Dr. Misra, who noted decreased memory and gastrointestinal side effects with her medication. On July 21, 2012, Dr. Misra opined that Plaintiff was disabled and unable to work in any capacity. He continued to treat her through at least the summer of 2013.

Dr. Brown performed a consultative exam and administered a memory test in May 2012 at the behest of the state agency. She concluded that Plaintiff had a mild impairment in her ability to sustain concentration and attention, and that Plaintiff's ability to repeat oral information immediately and to recall it twenty to thirty minutes later was in the extremely low range.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v.*

4

*Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR

96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A. Credibility Assessment

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

7

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ concluded that Plaintiff was not compliant with her medical treatment, and therefore considered her less than credible. He noted her decision to continue to smoke marijuana despite being told not to and drug screens indicating what he interpreted to be inadequate therapeutic drug levels. However, the record that he points to indicates drug levels in the expected concentration range, AR 786-87, and the ALJ does not point to any medical opinion indicating that Plaintiff's drug levels were inadequate because of non-compliance. Nor did the ALJ question Plaintiff about her presumed non-compliance. The regulations make it clear that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can

undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

Another significant reason the ALJ gave for finding Plaintiff less than credible was that she continued to go to school and do some work after the auto accident that caused her initial coma and the beginning of her seizure disorder. However, as Plaintiff argues, Plaintiff did not claim disability until 2011, and even before that date the record reflects that she needed accommodations to allow her to finish her degree and maintain even part-time work. The Court is unable to ascertain how Plaintiff's limited abilities before her alleged disability onset date make her less than credible about her abilities after that date.

Plaintiff also argues that the ALJ erred in finding Plaintiff less than credible because she suffered a seizure when driving after having report that she did not drive because of her impairments. Plaintiff argues that the record contains indications that she may have been cleared to drive by her neurologist. Although it is not obvious from the record that Plaintiff had been cleared to drive at the time of her hospitalization, the ALJ did not ask Plaintiff or her physicians whether she had indeed been cleared to drive at the time of the seizure, and on remand the Court recommends that the ALJ resolve inconsistencies in the record, particularly as to information he is relying on to deem Plaintiff less than credible.

In addition, Plaintiff argues that the ALJ failed to consider the side effects of Plaintiff's medication, ignoring repeated instances where she complained about gastrointestinal issues that

9

were side effects of her medications and could also directly affect her ability to work, in contravention of the requirement that he take these into account. *See* SSR 96-7p,*7 (including "side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" as one of the types of evidence "that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements") (citing 20 CFR 404.1529(c) and 416.929(c)) (emphasis added). The ALJ concluded that Plaintiff's complaints about her medication's side effects were only partially credible, but failed to account for her multiple reports of limiting side effects throughout the record. Plaintiff's failure to continually mention her side effects at each subsequent visit does not necessarily mean she did not continue to suffer from them; the Seventh Circuit Court of Appeals has expressed "skeptic[ism] that a claimant's failure to identify side effects undermines her credibility–after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Although he recognized that Plaintiff suffered from at least some gastrointestinal side effects, the ALJ did not explain why or to what extent he found her complaints of side effects less than credible, and only incorporated them into the RFC by limiting Plaintiff to less than sedentary work. The Court fails to follow the ALJ's logic that the need to rush to the bathroom even once per day as being accounted for in a limitation to sedentary employment.

The ALJ failed to question Plaintiff or obtain any medical opinion about her supposed lack of compliance with treatment, failed to consider the limiting effects of her medication's side effects, and used her activities prior to her alleged disability onset date to find her less than

credible now, errors requiring remand. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives when determining her credibility.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical opinions in the record and did not explain how the record supports the limitations in the RFC. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the

11

evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating neurologist. The Commissioner argues that the ALJ rejected it for well-supported reasons.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744.

In this case, neurologist Dr. Misra began treating Plaintiff in April 2012, and in July 2012 stated that "she is disabled and is unable to work in any capacity." AR 578. Dr. Maniar was also a treating neurologist who treated Plaintiff several times between May 2011 and March 2012, and opined that Plaintiff should not drive or work. AR 451, 456. Plaintiff argues that the ALJ did not mention these statements of disability in his analysis and did not evaluate Dr. Maniar's opinion according to the regulations. The Commissioner argues that the statements are not medical source opinions and that the ALJ did refer to Dr. Maniar's clinical notes.

If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent

12

of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). He must, however, explain what weight he is giving to the opinion. *Hamilton v. Colvin*, 525 F. App'x 433, 438 (7th Cir. 2013) ("The most obvious problem is that the ALJ said she was giving the doctors' opinions 'appropriate weight' without specifying how much weight is appropriate.").

The ALJ gave little weight to Dr. Misra's opinion, stating that Dr. Misra's medical source statement "is inconsistent with the doctor's own treatment records," pointing specifically to a letter to another physician indicating that the ALJ represented as "not[ing] . . .that she is 'doing quite well' and that she is without side effects." AR 21. In fact, that is a

13

misrepresentation of the letter, which refers to Plaintiff's complaints of multiple ongoing side effects, including GI issues, alopecia, and weight gain. The letter states that "[s]he is doing well, from a seizure perspective," but also mentions a number of health concerns and does not state that the seizure medication is expected to keep away seizures entirely. In addition to misrepresenting the note he relied on as inconsistent with the neurologist's statement of disability, the ALJ also failed to address the other factors that might lead him to give weight to Dr. Misra's opinion, including its consistency with the records of Plaintiff's other treating neurologist, Dr. Maniar, his specialty, or his familiarity with Plaintiff's case. A two week period without a seizure and a statement indicating optimism about a line of treatment is not obviously inconsistent with an opinion about Plaintiff's ability to maintain full-time work over more than two weeks leaving the Court unable to trace the ALJ's reasoning or conclude that he gave the appropriate weight to Plaintiff's treating neurologist's opinion.

The ALJ did not explain how much weight he gave to the opinion of Dr. Maniar and appears to have completely discounted it without explanation, despite his opinion, identical to Dr. Misra's, that Plaintiff could not work. An ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton*, 525 F. App'x at 438-39 (remanding in part for failure to address conflict between the RFC and physicians' opinions about here capacity). "While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ

14

was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). In this case, the ALJ did not even identify his decision to reject Dr. Miniar's opinion, and, as described above, his reasons for dismissing Dr. Misra's opinion are faulty. These failures are particularly concerning given the consistency between the two treating neurologist's reports and their repeated statements that Plaintiff is unable to work. This matter must be remanded for a thorough evaluation of Plaintiff's treating neurologist's statements about Plaintiff's ability to work.

The ALJ stated that he gave "partial weight" to the assessments of the state agency consultants' opinions, and, as described above, little weight to one of Plaintiff's treating neurologist, barely mentioning the other. The ALJ mentions the findings of consultative psychologist Dr. Brown with approval, but does not explain the weight given to her opinion. Accordingly, it is not apparent what medical source was given weight, and there is no indication that the ALJ gave any weight to any treating physician. Plaintiff also argues that the ALJ erred in giving even partial weight to the state agency consultants. In particular, Plaintiff argues that the finding that plaintiff could pay attention to tasks for sufficient periods of time and complete them is not supported by substantial evidence. Dr. Brown, who examined Plaintiff on behalf of the agency, found that Plaintiff's "ability to recall verbal and visual information after a 20 to 30 minute delay is in the Extremely Low range." AR 528. Plaintiff argues that this, as well as the other instances in the record of memory issues, indicate that there is no basis for the non-examining consultants' conclusions about Plaintiff's ability to concentrate. Plaintiff also argues that the consultants' assessment of the record occurred long before the hearing, and that Plaintiff

had two seizure events requiring emergency care after the assessment. On remand, the ALJ is instructed to fully review all of the medical evidence in the record and to obtaining updated information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

Plaintiff also argues that the RFC does not reflect all of the limitations that the ALJ found. He stated that she would be able to maintain attention and concentration for two hours at a time and for eight hours in a work day, but Plaintiff argues that the ALJ fails to describe what happens to Plaintiff's concentration at the end of a two-hour period. The Commissioner argues that it is apparent that Plaintiff will need to take a break at the end of the two hours and that the VE considered Plaintiff's inability to focus for more than two hours at a time when he opined that there were jobs available to Plaintiff. As Plaintiff argues, the RFC does not incorporate a need for breaks every two hours or describe how long those breaks would need to be. Plaintiff also argues that the limitation is not supported by the record, in which Dr. Brown describes Plaintiff's recall ability after twenty to thirty minutes as in the extremely low range. Although she noted only a "mild" impairment as to concentration and attention, the ALJ has not drawn a logical bridge between Plaintiff's recall ability and mild impairment in concentration to the ability to focus for two-hour blocks of time. In addition, as described above, the ALJ failed to incorporate Plaintiff's gastrointestinal side effects into the RFC, side effects which would be

16

likely to require additional breaks and might affect the VE's testimony. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543. On remand, the ALJ is directed to properly weigh the medical evidence in the record, including supplementing the record as necessary, and "must provide a 'logical bridge' between the evidence and his conclusions" about the RFC. *O'Connor-Spinner*, 627 F.3d at 618.

In this case, the ALJ failed to give controlling weight to the treating neurologists' opinions regarding the nature and severity of Plaintiff's impairments without explaining how the opinions were inconsistent with other substantial evidence in the record, did not identify any medical opinion from a treating or examining physician to which he gave greater weight, and failed to identify the evidence on which he based Plaintiff's RFC, particularly her ability to concentrate for two hours at a time or what kind of breaks she would require. Accordingly, the matter is being remanded.

**C.      Vocational Expert**

In this case, new VE testimony will likely be required after the credibility and RFC determinations are corrected as described above, and the Court is particularly concerned with one component of the VE's testimony relied upon by the ALJ in this case. Recently, the Seventh

Circuit Court of Appeals has questioned the appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the *Dictionary of Occupational Titles*, which is no longer published, and mainly moreover from information from 1977 – 37 years ago," noting that "[n]o doubt many of the jobs have changed and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Additionally, the *Browning* court expressed concern, particularly relevant in this case, that "[t]here is no official source of number of jobs for each job classification in the Dictionary of Occupational Titles . . . [a]nd many of the[ VEs] estimate the number of jobs of a type the applicant for benefits can perform by the unacceptably crude method of dividing the number of jobs in some large category (which may be the only available data) by the number of job classifications in the category." *Id*. That concern is particular relevant in this case, where the VE testified that Plaintiff would be able to perform work as a microfilm document preparer, DOT 249.587-018, a telephone quote clerk (someone who provides stock quotations via telephone from information posted on an electronic quote board), DOT 237.367-046, and a charge account clerk (who assists customers in filling out and/or reviews credit card applications received by mail), DOT 205.367-014 - all jobs that have been reduced significantly in number if not rendered obsolete by the rise of the internet. However, as in *Browning*, in this case "the administrative law judge accepted without comment" the VE's claim "of the number of jobs . . . the plaintiff could perform that exist in the plaintiff's area." *Browning*, 766 at 709.

The case is being remanded for other reasons described above, and new VE testimony will likely need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE. In addition, the Court

recommends that the ALJ specifically ascertain the source of the VE's opinion that the jobs identified as able to be performed by Plaintiff do, in fact, actually exist in the regional economy.

**D.      Remedy**

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to properly weigh the medical opinions in the record, to draw a logical bridge from the evidence to his conclusions, or to properly assess Plaintiff's credibility. Additionally, although Plaintiff requests an award of benefits, she fails to present a developed argument in favor of doing so. The ALJ must review the record in accordance with the regulations and fully explain how all of Plaintiff's limitations are incorporated into the RFC and make a proper credibility determination. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 18th day of February, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record